UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD G. WATERS,                 Civil Action No. 10-14927

    Plaintiff,                                    HON. GERALD E. ROSEN
                                                            U.S. District Judge
v.                                                          HON. R. STEVEN WHALEN
                                                            U.S. Magistrate Judge
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Donald G. Waters brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #11] be GRANTED and Plaintiff's motion [Doc. # 10] DENIED.

## **PROCEDURAL HISTORY**

On June 25, 2008, Plaintiff filed an application for SSI, alleging disability as of June 30, 2005 (Tr. 102-104). After the initial denial of the claim, he filed a request for an administrative hearing, held on March 29, 2010 in Detroit, Michigan before Administrative Law Judge ("ALJ") Oksana Xenos (Tr. 21). Plaintiff, represented by attorney Adam Banton, testified (Tr. 24-34), as did Vocational Expert ("VE") Diane Regan (Tr. 34-37). On April 20, 2010, ALJ Xenos found that Plaintiff was not disabled (Tr. 17). On November 23, 2010,

the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the Commissioner's decision on December 11, 2010.

## BACKGROUND FACTS

Plaintiff, born November 24, 1964, was 45 when the ALJ issued her decision (Tr. 17, 102). He left school in eleventh grade and has no past relevant work (Tr. 125, 129). His application for benefits alleges disability as a result of a body pain due to human immunodeficiency virus ("HIV") (Tr. 125).

### A.     Plaintiff's Testimony

Plaintiff testified that he stood 5' 8" and weighed 210 pounds (Tr. 24). Plaintiff reported that he currently lived in a drug "rehab" facility (Tr. 25). He alleged disability due to the HIV diagnosis as well back pain as a result of an old gunshot wound (Tr. 25). He stated that he worked for three months as a maintenance provider, but was terminated after failing to keep up with his work (Tr. 25-26). He denied any other work in the past decade (Tr. 26). He testified that he took medication for HIV on a daily basis (Tr. 26-27). He denied side effects other than occasional irritability (Tr. 27).

Plaintiff testified that on a typical day at the treatment center, he showered, dressed (with the help of his roommates) and completed writing projects assigned by his counselor (Tr. 27). He denied driving (Tr. 28). He reported that his sister-in-law would typically do his grocery shopping (Tr. 29). He indicated that he spent his free time watching television and playing pool (Tr. 29). He reporting sleeping five hours each night (Tr. 30). He denied alcohol use (Tr. 30).

Plaintiff alleged that difficulty bending and lifting, in addition to the aforementioned conditions, prevented him from working (Tr. 30). In response to questioning by his attorney, Plaintiff noted that he required a back brace and cane (Tr. 31). He stated that his condition

caused headaches, nausea, and memory problems (Tr. 32). Also reporting depression, Plaintiff stated that he saw both a therapist and psychiatrist on a weekly basis (Tr. 32). He alleged that depression caused social withdrawal (Tr. 33). He reported a "late 90s" suicide attempt (Tr. 33). In response to additional questioning by the ALJ, Plaintiff reported that he had last used cocaine and drunk alcohol approximately five months before the hearing (Tr. 34).

    **B.    Medical Evidence**

### 1. Treating Sources

In June, 2005, Plaintiff sought emergency treatment for nausea and stomach pain (Tr. 192). He was diagnosed with gastritis and discharged in stable condition (Tr. 193). In August, 2007, Plaintiff's brother filed a petition for Plaintiff's hospitalization, stating that Plaintiff, a drug user and HIV positive, was currently homeless (Tr. 188). The petition states that Plaintiff had pulled a gun on a relative, threatened suicide, and alienated friends (Tr. 189). An intake evaluation for inpatient treatment, performed the same month, states that Plaintiff exhibited "poor" frustration tolerance and a depressed mood (Tr. 178). Plaintiff stated that his "most violent" act was to attempt to slit his own wrists in 1996 (Tr. 180). He described his current relationship with his family as "good" (Tr. 174). He reported depression and a drug abuse relapse as the reasons for treatment (Tr. 169, 173, 176). He was discharged the following month in stable condition (Tr. 166).

Treating records by the University Physicians Group show that Plaintiff received medical treatment for various conditions from September, 2005 forward (Tr. 268). In March, 2008, a teaching physician remarked that Plaintiff alleged "chronic" back pain (Tr. 250, 253). In June, 2008, a physical health examination noted the absence of psychiatric illness or new health complaints (Tr. 245). A November, 2008 physical exam was unremarkable (Tr. 239).

Plaintiff was negative for psychiatric symptoms, but reported back pain (Tr. 236). April, 2009 treating notes state that Plaintiff wore a back brace but did not exhibit tenderness (Tr. 236). He did not show signs of depression (Tr. 236). In September, 2009, Plaintiff continued to take Vicodin for back pain but was noted to be in no apparent distress (Tr. 232). December, 2009 treating notes state that Plaintiff resumed cocaine use in July, 2009 and had recently been diagnosed with depression (Tr. 231). In January, 2010 therapist Jason Jordan stated that Plaintiff was currently undergoing weekly therapy for depression (Tr. 288). Jordan assigned Plaintiff a GAF of 66[1] (Tr. 288). He opined that Plaintiff was incapable of gainful employment (Tr. 288). Treatment notes from the following month state that Plaintiff was under "a great deal of stress" resulting in headaches and sleeplessness (Tr. 275, 277).

A March, 2010 assessment of Plaintiff's work-related abilities states that his mental abilities were "unlimited or very good," but that psychological symptoms would be expected to interfere with his work "occasionally" (Tr. 300). The same assessment states that Plaintiff would require a sit/stand option and would be unable to perform "routine, repetitive tasks" or work at a fast pace (Tr. 299). He was deemed unable to lift more than 10 pounds (Tr. 299). The same month, therapist Jason Jordan opined that Plaintiff's psychological problems would prevent him from meeting "competitive [work] standards" (Tr. 292). The therapist again assigned Plaintiff a GAF of 66 (Tr. 290). Treatment notes from the same month state that Plaintiff denied current suicidal ideation (Tr. 272).

### 2. Consultive and Non-Examining Sources

---

[1] GAF scores in the range of 61-70 indicate "some mild [psychological] symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders–Text Revision at 34 (DSM–IV–TR ) (4th ed.).

In June, 2006, E. Montasir, M.D. performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 194-198). Plaintiff reported depression, but admitted that he had not sought treatment (Tr. 194). He admitted to smoking and moderate drinking, but denied illicit drug use (Tr. 194). Plaintiff exhibited a normal gait and excellent grip but refused to try to bend or squat (Tr. 195). His range of motion was otherwise normal (Tr. 195). Dr. Montasir found the absence of muscle atrophy (Tr. 196). A visual examination of the spine was unremarkable (Tr. 195). An x-ray of the lumbar spine taken the same day showed minimal spurring but no fracture or dislocation (Tr. 197). The following month, a Psychiatric Review Technique found the absence of a determinable mental impairment (Tr. 201).

On September 2, 2008, Bina Shaw, M.D. performed a second consultive examination of Plaintiff on behalf of the SSA (Tr. 215-221). Plaintiff reported taking Vicodin on an "as needed" basis, but denied prescription or illicit drug abuse (Tr. 215). Plaintiff's examination was unremarkable (Tr. 216). He recalled his birth date and the name of the current president (Tr. 216). Dr. Shaw found the presence of "HIV positivity" but no other condition (Tr. 217).

The same day, Plaintiff underwent a psychiatric evaluation by Atul C. Shah, M.D. (Tr. 224). Plaintiff stated that he became depressed after acquiring HIV (Tr. 222). He denied alcohol or current illicit drug abuse (Tr. 222). He alleged that he was unable to work because of "feeling tired and dizziness" (Tr. 222). He exhibited good contact with reality with fair insight (Tr. 223). Plaintiff professed the inability to remember his birth date (Tr. 223). He alleged paranoid ideation (Tr. 223). Dr. Shah assigned him a GAF of 50 [2] (Tr. 224).

---

[2] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

-5-

### C.     Vocational Expert Testimony

VE Regan testified that Plaintiff had no past relevant work (Tr. 34). The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, education and the lack of work experience:

> [A]n individual . . . who would be able to perform at all exertional levels, but the work would be limited to unskilled and routine work, with one to two-step instructions; minimal contact with the general public, and cannot operate foot or leg controls.

(Tr. 35). The VE replied that given the above limitations, the individual could perform the unskilled, exertionally medium work of a packer (12,000 positions in the regional economy), punch press operator (16,000), sweeper cleaner (4,100), as well as the exertionally light positions of machine tender (12,000), packer (6,000), and sorter (6,000)[3] (Tr. 35).

The VE found that if the above-described individual also required a sit/stand option, the medium jobs would be eliminated and the light jobs would be reduced by 50 percent (Tr. 36). However, he found that the limitations of a sit/stand option would not preclude the sedentary jobs of sorter (1,500), bench assembler (3,000), or mail clerk (1,200) (Tr. 36). VE Regan found that if Plaintiff's allegations of mood swings, depression, concentrational problems, and pain were fully credited, he would be unable to engage in any competitive employment (Tr. 36). He stated that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT") with the exception of the job

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

findings pertaining to a sit/stand option which were based on his own professional experience (Tr. 36).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ found that Plaintiff experienced the "severe" impairments of "history of gunshot wound, history of polysubstance abuse, HIV, and depression," but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 9). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following limitations:

> [H]e can lift 10 lbs; requires a sit/stand option; is limited to unskilled, routine work with 1'2 step instructions and minimal contact with the general public; and cannot operate foot/leg controls

(Tr. 11). Citing the VE's job numbers, the ALJ determined that Plaintiff could perform the work of a machine tender, packer, and sorter (Tr. 16).

The ALJ discounted Plaintiff's allegations of disability (Tr. 13-15). She noted that Plaintiff had falsely told Dr. Atul Shah that he had been sober since 2005 (Tr. 13). She also noted that during the same psychiatric evaluation, Plaintiff denied knowing his birth date, despite the fact that he had correctly stated his birth date during the exam by Dr. Bina Shaw earlier the same day (Tr. 13).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

### **ANALYSIS**

### A. The Treating Source Analysis

Plaintiff argues first that remand is appropriate because ALJ ignored "the medical opinions of trained treating physicians without any rational basis." *Plaintiff's Brief* at 11. He faults the ALJ's rejection of therapist Jason's Jordan's March, 2010 assessment, contending that the finding is unsupported by "good reasons" as required by 20 C.F.R. § 1527(d)(2). *Id.* at 12.

"If the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue,* 573 F.3d 263, 266 (6th Cir.2009)(internal quotation marks omitted)(citing *Wilson,* 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). However, in the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings, *see Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391–392 (6th Cir.2004), provided that he supplies "good reasons" for doing so. *Wilson,* at 547; 20 C.F.R. § 404.1527(d)(2).[4]

Plaintiff's argument suffers from several defects. First, therapist Jason Jordan, a licensed social worker, is not a "treating physician." Thus, the ALJ is not required to adhere to the requirements of § 404.1527(d)(2) in discussing or rejecting his opinion. Under 20 C.F.R. § § 404.1527(a) and 416.927(a)(2), only "acceptable medical sources" can provide medical opinions. An acceptable medical source has been defined to include physicians, psychologist, optometrists, podiatrists, and speech pathologists. 20 C.F.R. §§ 404.1513(a)

---

[4] In explaining reasons for rejecting the treating physician opinion, the ALJ must consider "the length of the ... relationship and the frequency of examination, the nature and extent of the treatment[,] ... [the] supportability of the opinion, consistency ... with the record as a whole, and the specialization of the treating source." *Wilson,* at 544.

and 416.913(a).

To be sure, Jordan's opinion is entitled to some consideration. While opinions from non-physician medical sources such as nurse practitioners, physician assistants, licensed clinical social workers, psychological therapists are not technically "acceptable medical sources," SSR 06–03p, 2006 WL 232939, these opinions "should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.* In keeping with the requirements of SSR 06-03p, the ALJ devoted three paragraphs of the opinion to the discussion and rejection of Jordan's opinion. She noted that Jordan's treatment notes did not support his March, 2010 statement that Plaintiff experienced the "side effects" of dizziness, drowsiness, tiredness, upset stomach, paranoia, poor appetite, and sleep disturbances, adding that Plaintiff had alleged these "side effects" prior to taking psychotropic medication (Tr. 14 *citing* 291). She rejected Jordan's opinion that Plaintiff was incapable of all gainful employment, noting that Plaintiff was capable of taking his medications on schedule and "appeared for all of his appointments . . .," a fact "inconsistent with Mr. Jordan's opinion of the claimant's limitations." (Tr. 15). Elsewhere in the opinion, she discounted Plaintiff's alleged degree of both physical and psychological limitation by citing consultive exam notes showing that he falsely denied knowing his own birth date and exaggerated his physical limitations (Tr. 215, 217, 223).

Plaintiff also faults the ALJ for rejecting a March, 2010 assessment by the University Physician Group on the basis that "the author's signature was inelligible and unknown." *Plaintiff's Brief* at 13 (*citing* Tr. 15). Citing SSR 96-5p, he contends that the ALJ was required to re-contact the source for clarification. *Id.* However, the fact that the purported physician's signature was illegible was only one of *several* reasons cited by the ALJ for the rejection of the assessment. She also found that the opinion was internally inconsistent,

-10-

noting that it contained both the findings that 1). Plaintiff's mental abilities were "unlimited or very good," and 2). his mental limitations would interfere with his work "occasionally" (Tr. 300). She also noted that the assessment of Plaintiff's physical abilities was unsupported by the treating records or objective medicine. Consistent with the ALJ's finding, physical examination notes predating the assessment were generally unremarkable with the exception of back pain which appear to be well-controlled with medication  (Tr. 232, 239, 245). The ALJ also noted that allegations of limitation were contradicted by consultive exam notes and the fact that Plaintiff played pool regularly (Tr. 14-15, 195-197, 216). Because 1). the ALJ assumed that the author was a treating physician and 2). provided a number of other "good reasons" for rejecting the March, 2010 assessment, re-contacting the source for the sole purpose of obtaining the name of the assessor (whose opinion was to be discounted for other reasons) would be a waste of administrative resources.

### B.  Plaintiff's Allegations of Lumbar Back Disorder

Plaintiff argues next that the ALJ erred by omitting a lumbar back disorder from the Step Two "severe" impairments. *Plaintiff's Brief* at 14-15 (*citing* Tr. 9). Plaintiff contends that in finding that his back problems did not create workplace limitations, the ALJ improperly substituted her own judgment to that of his medical doctors. *Id.* at 15.

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS,* 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.* at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). 20 CFR § 416.921(a) defines

a *non*-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities."

The ALJ's omission of a "lumbar back condition" does not present grounds for remand. First, while the ALJ did not include the term "lumbar back condition" in her Step Two findings, she found the "history of gunshot wound," thereby acknowledging Plaintiff's claim that alleged bullet fragments (allegedly causing back pain) created a work-related limitation (Tr. 9). While Plaintiff argues that medical notes showing that he wore a back brace as of April, 2009, he does not present evidence that the need for a brace was the result of a condition independent of problems created by the bullet fragments.

Further, assuming that the term "lumbar back problems" or "lumbar back pain" ought to have been included at Step Two, the error is harmless. So long as "an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two 'does not constitute reversible error.'" *Fisk v. Astrue,* 253 Fed.Appx. 580, 583, 2007 WL 3325869, *4 (6th Cir. 2007)(citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). Here, the ALJ took into account Plaintiff's allegations of back problems at Step Five by limiting him to lifting 10 pounds in both the hypothetical question and RFC found in the administrative decision. Plaintiff's related argument that the ALJ did not perform a function by function analysis of the limitations found in the RFC is contradicted by the five-page discussion of his testimony and treating notes directly following finding "4" of the administrative opinion (Tr. 11-15).

### C. The Hypothetical Question/RFC

Last, Plaintiff contends that the hypothetical question forming the basis of the VE's job findings and the corresponding RFC found in the administrative opinion do not

accurately reflect the degree and nature of his impairment. *Plaintiff's Brief* at 15-17.  Citing *Varley v. Secretary of HHS,* 820 F. 2d 777, 779 (6th Cir. 1987), he argues that the hypothetical question and RFC do not address the Step Two severe impairments of "history of gunshot wound, history of polysubstance abuse, HIV, and depression." *Plaintiff's Brief* at 16-18 (*citing* Tr. 11).

A hypothetical question constitutes substantial evidence only if it accounts for claimant's full degree of work-related impairment.  *Varley*  820 F.2d at 779.  While "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments," it need not list all of a claimant's maladies verbatim. *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004)(citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)). *See also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).

As discussed in Sections **A.** and **B.**, above, the ALJ's inclusion of certain limitations in the hypothetical and RFC and exclusion of others is well explained and well supported by the record.  Plaintiff's contention that the ALJ erred by not including the terms "depression," "HIV," or other Step Two terms in the hypothetical  is defeated by *Webb, supra,* at 632, which holds that a claimant's conditions need not be listed verbatim in the hypothetical question provided that the hypothetical limitations reflect the Step Two impairments.  Here, the ALJ's sufficiently acknowledged her Step Two findings by limiting Plaintiff to carrying 10 pounds and a preclusion on foot/leg controls (history of gunshot wound), and "unskilled, routine work with 1-2-step instructions and minimal contact with the general public" (polysubstance abuse, HIV, depression) (Tr. 9, 11, 35).  Further, to the extent that Plaintiff argues that the hypothetical limitations did not reflect his moderate deficiencies in concentration, persistence, and pace as found in the administrative opinion (Tr. 10), he does not state how the VE's job findings of machine tender, packer, and sorter would be altered,

if at all, by the inclusion of "moderate deficiencies of concentration, persistence, and pace" in the text of the hypothetical question.[5]   Given that the ALJ's reasons for discounting a portion of Plaintiff's claims was well discussed, his contention that the she ought to have included all of his allegations of limitation in the hypothetical question and RFC is unavailing. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994) ( *citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987))("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

In closing, I note that my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's legitimate limitations or personal problems. However, based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #11] be GRANTED and Plaintiff's motion [Doc. #10] DENIED.  Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

---

[5] While moderate deficiencies in "pace" could arguably affect Plaintiff's ability to perform the production jobs of packer and sorter, the machine tender position does not contain a pacing requirement.  Even if the packer and sorter jobs were omitted from the findings, the 6,000 existing machine tender positions in the regional economy constitute a "substantial" number.  *Born v. Sec'y of H.H.S.,* 923 F.2d 1168, 1174 (6th Cir.1990) (citing *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988)).

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                   s/ R. Steven Whalen  
                                   R. STEVEN WHALEN  
                                   UNITED STATES MAGISTRATE JUDGE

Date: January 5, 2012

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on January 5, 2012.

                                   s/Johnetta M. Curry-Williams  
                                   Case Manager